UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
<u>EASTERN DIVISION</u>

| | | |
|---|---|---|
| Moirsche Terrell Sibley, | ) | |
| | ) | 17 C 6298 |
| Plaintiff, | ) | |
| | ) | Honorable Judge |
| v. | ) | Robert M. Dow, Jr. |
| | ) | |
| Officer Jefferson, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MOTION TO DISMISS SECOND AMENDED COMPLAINT</u>**

NOW COME the Defendants,[1] by their attorney Kimberly M. Foxx, State's Attorney of Cook County, through her assistant, JOHN POWER, pursuant to Federal Rule of Civil Procedure 12(b)(6), and move this Court to dismiss Plaintiff's Second Amended Complaint with prejudice.

**Introduction**

The Supreme Court has stated that the Eighth Amendment prohibits cruel and unusual "punishments," not cruel and unusual "conditions." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994). According to Plaintiff's Second Amended Complaint, during the late night hours of February 26, 2017, at approximately 11:20 pm, a fire broke out in the vents in Division 10 of Cook County Jail (CCJ), creating a thick, chemical-smelling smoke in tier 2A and various other tiers within Division 10. (Dkt. 31 at ¶ 35.)[2] While Plaintiff alleges that the tier officer was not present when the smoke first appeared, she was back on the tier a short time later, and immediately called her superiors once she noticed smoke. (Id. at ¶ 36-38.) Ten to fifteen minutes later the tier was evacuated to the chapel, where

---

[1] Plaintiff has named 25 Defendants, not all of whom have been served. Nevertheless, the arguments advanced in this Motion to Dismiss would generally apply to all Defendants.
[2] The allegations in Plaintiff's Second Amended Complaint are presumed true solely for this Motion to Dismiss.

the detainees spent two hours waiting for the smoke to clear. (Id. at ¶ 39-41.) Subsequently, the detainees and officers returned to tier 2A, which was still smoky. (Id. at ¶ 43.)

The allegations in Plaintiff's Second Amended Complaint do not show any cruel and unusual punishment to the Plaintiff, but an emergency situation CCJ personnel responded to as best they could given security considerations. Fundamentally, there was no punishment.

Second, while Plaintiff names twenty-one individual officers, and identifies them as being employees of the Cook County Sheriff, the "Factual Allegations" section of the complaint only describes individual actions taken by four officers by name, one of whom informed Plaintiff that there was no medical staff available at that late hour, and another of whom had difficulty with the smoke and vomited into a toilet. (Dkt. 31 at ¶ 40, 44.) The complaint simply does not contain enough factual allegations against the individual defendants.

Third, the allegations in the Second Amended Complaint are conclusory and have failed bring an official capacity claim against Defendant Dart.

**Standard of Review**

A court may dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) if the plaintiff fails "to state a claim upon which relief can be granted." When considering a motion to dismiss, the Court must assume as true all well-pleaded allegations in the complaint and construe all reasonable inferences in favor of the plaintiff. *See, e.g., Gibson v. City of Chicago*, 910 F.2d 1510, 1520-21 (7th Cir. 1990). "[T]he liberal notice pleading allowed by the federal rules requires the complaint to include the operative facts upon which a [P]laintiff bases his claim." *Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 198 (7th Cir. 1985) (citations omitted). If a complaint fails to allege a necessary element required to obtain relief, dismissal is in order. *See R.J.R. Services, Inc. v. Aetna Casualty and Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989).

Furthermore, a court is not "required to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *City Nat'l Bank of Florida v. Checkers, Simon & Rosner*, 32 F.3d 277, 281 (7th Cir. 1994) (citations omitted).

### Factual Allegations

Plaintiff alleges that during the late night hours of February 26, 2017, at approximately 11:20 pm, a fire broke out in the vents in Division 10 of CCJ, creating a thick, chemical-smelling smoke in tier 2A and various other tiers within Division 10. (Dkt. 31 at ¶ 35.) Plaintiff alleges that the tier officer, Officer Jefferson, was not present when the smoke first appeared, although she was back on the tier 20 minutes later, and immediately called her supervisors once she noticed the smoke. (Id. at ¶ 36-37.) Ten to fifteen minutes later the tier was evacuated to the Chapel, where the detainees waited for two hours. (Id. at ¶ 38-39.) During that time Plaintiff became "light-headed and dizzy", and asked Officer Velez to see a doctor or nurse. (Id. at ¶ 40.) Officer Velez informed Plaintiff that there was no medical staff available at that time. (Id.) Two hours later, Plaintiff again became light headed and dizzy, vomited, and passed out. (Id. at ¶ 41-42.) Subsequently, the officers had the detainees return to their still smoky tier, which caused Officer Brown to choke and vomit into a toilet. (Id. at ¶ 44.) Plaintiff alleges that he did not want to return to his tier, but Officer Judge threatened to spray the detainees with mace if they did not return. (Id. at ¶ 45-47.) Plaintiff alleges that "All the Officer Defendants" participated in or watched Plaintiff be returned to his cell. (Id. at ¶ 48.) Although Plaintiff states that he continued to suffer from "smoke inhalation", Plaintiff does not detail any physical injuries allegedly suffered as a result of this incident. (Id. at ¶ 49.)

### Argument

**I.      Plaintiff Has Failed to State a Cause of Action.**

To state a claim for unconstitutional conditions in violation of the Eighth Amendment, the conditions of confinement must be a denial of "basic human needs" or "the minimal civilized measure of life's necessities", and the infliction must be deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable. *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996).

A viable Eighth Amendment claim must contain both an objective and a subjective component. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999). Under the objective prong, a deprivation must be sufficiently serious such that a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities. *Id*. Extreme deprivations are necessary to meet the objective prong of the conditions-of-confinement claim. The subjective prong requires that the detainee allege that the jail officials knew of a substantial risk of serious injury to the detainee but nevertheless failed to take reasonable measures to prevent the harm from occurring. *Id*.

Before even examining whether Plaintiff met the subjective or objective prongs required for an Eighth Amendment claim, "an inmate must show that he has suffered an objectively, sufficiently serious injury." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An objectively, sufficiently serious injury is one that deprives the inmate "the minimal civilized measure of life's necessities." *Dvorak v. Racine County Jail Sheriff*, 2007 U.S. Dist. LEXIS 29892 at *13 (E.D.Wis. 2007), quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). No matter how unpleasant the conditions, "unpleasant conditions that do not result in physical harm do not rise to the level of an Eighth Amendment Violation." *Wade v. Haida*, 2013 U.S. Dist. LEXIS 119992 at ** 17-18 (S.D. Ill. Jan. 29, 2013) (Oberto, J.) (citing *Harris,* 839 F.2d at 1235).

4

Similarly, because Plaintiff is incarcerated, this action is governed by the Prison Litigation Reform Act ("PLRA"), and Plaintiff is unable to bring a suit absent physical injury greater than *de minimis*. 42 U.S.C. § 1997e(e), (h). *Wade v. Haida*, 2013 U.S. Dist. LEXIS 119992 at *17-18 (S.D. Ill 2013), citing *Harris*, 839 F.2d at 1235. *See also Shaw v. Wall*, No. 12-cv-497, 2015 WL 1925045, at *2 (W.D. Wis. Apr. 28, 2015) (discomfort from stuffy nose is a *de minimis* injury that does not qualify as "physical injury" under the PLRA); *Oliver*, 289 F.3d at 626-28 (back and leg pain is *de minimis*); *Alexander v. Tippah Cty, Miss.*, 351 F.3d 626, 631 (5th Cir. 2003) (<u>vomiting and nausea is *de minimis*</u>); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (sore, bruised ear lasting three days is *de minimis*); *Dolberry v. Levine*, 567 F. Supp. 2d 413, 418 (W.D. NY 2008) (skin rash is *de minimis*); *Pearson v. Welborn*, 471 F.3d 732, 744-45 (7th Cir. 2006) ("plaintiff's unelaborated testimony of mental and physical depression, plus 50 pound weight loss did not establish a physical injury."). In the case at bar, Plaintiff's claims must be dismissed because he has not alleged a sufficiently serious injury.[3] Plaintiff's claims of being light headed and vomiting are not enough.

Next, Plaintiff's complaint fails to meet the objective prong for a showing of an Eighth Amendment claim. In *Harris v. Flemming*, 839 F.2d 1232, 1234-35 (7th Cir. 1988), the Seventh Circuit upheld a grant of summary judgment for the defendants because it found that failure to provide toilet paper for five days, and failure to provide soap, a toothbrush, and toothpaste for

---

[3] Similarly, in the excessive force context, a plaintiff must show an injury greater than *de minimis* to be actionable. *DeWalt v. Carter, et al.*, 224 F.3d 607, 619-20 (7th Cir. 2000) ("[W]hile significant injury is not required, a claim ordinarily cannot be predicated upon a *de minimis* use of physical force."). *See also Hudson v McMillian*, 503 U.S. 1, 6-7 (1992); *Hendrickson v. Cooper*, 589 F.3d 887 (7th Cir. 2009). In *DeWalt*, in granting the defendant's motion to dismiss, the court held that despite the plaintiff suffering minor bruising, the officer's shoving of the plaintiff "qualifies as the kind of *de minimis* use of force that does not constitute cruel and unusual punishment." *Id*. at 620. While "a prisoner need not suffer serious injury to bring an Eighth Amendment claim," not every push or shove by an officer violates a prisoner's constitutional rights. *Hudson*, 503 U.S. at 9; *Jones v. Walker*, 358 Fed. App'x 708, 712-13 (7th Cir. 2009) (affirming dismissal pursuant to Section 1915A screening where plaintiff stated he was pushed hard resulting in bruising because "[a] single shove that results in bruising is *de minimis* force that will not support a claim of excessive force.").

ten days, and to be kept in a filthy, roach-infested cell for twenty-eight days, was not a violation of the Eighth Amendment when the conditions were temporary and the inmate suffered no physical harm. *Harris* also contained the now axiomatic admonition that "inmates cannot expect the amenities, conveniences and services of a good hotel". 839 F.2d at 1235.

Courts in the Seventh Circuit have repeatedly followed *Harris'* lead, and affirmed the proposition that it is a high hurdle to show conditions of confinement that violate the Constitution. *See, e.g.*, *Morissette v. Peters*, 45 F.3d 1119, 1122-23, n. 6 (7th Cir. 1995) (plaintiff's "filthy" cell, inadequate cleaning supplies, and exposed wires did not violate the Eighth Amendment); *Smith v. Melvin*, 1996 U.S. App. LEXIS 20592 at *5-6 (7th Cir. July 26, 1996) (affirming motion to dismiss where the inmate's cell had a leaky toilet that caused standing water on the floor that might damage the inmate's personal belongings, including legal documents, because the "allegations of water leaking from the toilet and accumulating on the cell floor do not rise to the level of extreme deprivation required to establish an objective violation." The court also noted that "Leaky toilets and puddles are unpleasant but not unconstitutional."); *Geder v. Godinez*, 875 F. Supp. 1334, 1341 (N.D. Ill. 1995) (defective pipes, sinks and toilets, improperly cleaned showers, stained mattresses, accumulated dust and dirt and infestation by roaches and rats did not rise to level of an Eighth Amendment violation, alone or in combination); *Wilson v. Schomig*, 863 F. Supp. 789, 794-95 (N.D. Ill. 1994) (cell containing dirt, dust, roaches, a leaking roof during rainstorms, and a urine-stained mattress did not violate the Eighth Amendment); *Ra Chaka v. Nash*, 536 F. Supp. 613, 617 (N.D. Ill. 1982) (granting motion to dismiss on the grounds that three days in a "small, unsanitary and rodent-infested" cell where the inmate was forced to sleep on a mattress on the floor did not violate the Eighth Amendment); *Boyles v. Haynes*, 2012 U.S. Dist. LEXIS 25410 at *8 (C.D. Ill. Feb. 28, 2012) (finding no

Constitutional claim where *pro se* complaint alleged the jail staff refused to launder plaintiff's clothing for a few days, there was mold in the showers, Plaintiff needed to move around more because of his arthritis, and he "never had water in the sink"); *Smith v. Schwartz*, No. 10-721-GPM, 2011 U.S. Dist. LEXIS 56242 at *8 (S.D. Ill. May 26, 2011) (denial of shower, cleaning supplies, and laundry service for thirty-two days did not rise to a constitutional violation); *Granville v. Dart*, No. 09-cv-2070, 2011 U.S. Dist. LEXIS 25683 at *13-19 (N.D. Ill. Mar. 11, 2011) (no objectively serious constitutional deprivation in the case of dripping water, exposed mesh wire, crumbling plaster, chipped paint, mold, and mildew); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1992) (an inch or two inches of standing water in the shower, even when an inmate has a sore toe, does not violate the constitution); *Smith v. Debruyn*, 1996 U.S. App. LEXIS 18424 at * 16 (7th Cir. 1996) (affirming district court's dismissal pursuant to Rule 12(b)(6) where inmate claimed prison was unclean, noisy, drafty, cold, and unsafe); *Miller v. Ryker*, 2012 U.S. Dist. LEXIS 120785 at *36-27 (S.D. Ill. 2012) (dismissing claim that inmate's cell was unnaturally cold, extremely cold one night, and that the inmate was denied an extra blanket, because at most those claims demonstrated the inmate's cell was uncomfortable, "but that does not state a claim for cruel and unusual punishment"); *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir 1997) ("just because low temperature forces a prisoner to bundle up indoors during winter does not mean that prison conditions violate the Eighth Amendment"); *Mays v. Springborn*, 575 F.3d 643, 648-49 (7th Cir. 2009) (prisoner's complaint about inadequate winter clothing "did not show that he was forced to be in the cold for long periods of time or that he suffered anything more than the usual discomforts of winter."); *Gray v. Hardy*, 2013 U.S. Dist. LEXIS 140368 at * 24-25 (N.D. Ill. 2013) (claims that prison was infested with birds, mice, roaches, ants, spiders, mosquitoes, flies, gnats, and moths not sufficient to show unconstitutional conditions, especially

where plaintiff had not been harmed by any of the pests other than the mosquitoes); *Moore v. Monahan*, 2009 U.S. Dist. LEXIS 9266 at * 20-22 (N.D. Ill. 2009) (five-and-a-half months in a cell infested with insects not sufficient to show an objectively serious constitutional deprivation).

In addition to the above cases which set forth the high bar necessary for a conditions of confinement claims, *Morissette v. DeTella*, 1997 WL 619851, 1997 U.S. Dist. LEXIS 15364 (N.D. Ill. Sept. 29, 1997) (Pallmeyer, J.), deals specifically with the alleged exposure to engine fumes. There, plaintiff alleged 45 minutes of exposure to engine fumes which caused plaintiff to become <u>dizzy and vomit</u>, and which led to long-term headaches and dizzy spells. Nevertheless, the court dismissed those claims on 1915A Review because "<u>brief and isolated exposure</u> to engine exhaust does not violate the Constitution." 1997 U.S. Dist. LEXIS 15364 at *13-14. Similarly, in *Henderson*, the Seventh Circuit found that <u>breathing problems, chest pains, dizziness, sinus problems, and headaches</u> that resulted from exposure to second hand smoke were relatively minor, and affirmed the lower court's dismissal. 196 F.3d at 845-46. Plaintiff has failed to put forth allegations that satisfy the objective prong of an Eighth Amendment claim, and his Second Amended Complaint must be dismissed.

Finally, Plaintiff has also failed to set forth a claim that satisfies the subjective prong of an Eighth Amendment claim. The Eighth Amendment prohibits cruel and unusual "punishments," and not cruel and unusual "conditions," so a viable Eighth Amendment claim must also contain a subjective component in which the detainee must allege that jail officials knew of a substantial risk of serious injury but nevertheless failed to take reasonable measures to prevent the harm from occurring. *Farmer*, 511 U.S. at 834, 837; *Henderson*, 196 F.3d at 845; *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994). As noted above, Plaintiff has failed to allege

that he was punished, and instead describes an emergency situation that officers dealt with as best they could—there was no punishment.

Plaintiff has made no allegations that Defendants failed to take reasonable measures to prevent any harm from occurring. Negligence of unconstitutional conditions does not satisfy the subjective prong required for an Eighth Amendment claim. *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994) ("We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.")

The closest Plaintiff comes to alleging that any officer was deliberately indifferent to Plaintiff's safety is when he alleges that Officer Jefferson was off of her tier for 20 minutes. (Dkt. 31 at ¶ 36.) However, as the Northern District of Illinois has found, the law requires no more than 30-minutes checks. *Solivan v. Dart, et al.*, 897 F. Supp. 2d 694, 699 (N.D. Ill. 2012.) Indeed, Plaintiff alleges that once Officer Jefferson became aware of the situation, she immediately notified her supervisors, and a short time later backup arrived so that the entire tier could be evacuated and sent to the chapel area for several hours while the smoke cleared. Once prison officials know about a serious risk of harm, they are only required to take reasonable measures to abate it, and "[o]f course, an official's response may be reasonable even if it fails to avert the harm." *Dale*, 548 F.3d at 569, *citing Borellow v. Allison*, 446 F.3d 742, 747 (7th Cir.

9

2006). In the case of physical altercations, "correctional officers who are present during a violent altercation between prisoners are not deliberately indifferent if they intervene with a due regard for their safety." *Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011), citing *Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir. 2007) ("A prison guard, acting alone, is not required to take the unreasonable risk of attempting to break up a fight between two inmates when the circumstances make it clear that such action would put her in significant jeopardy."). In *Shields*, the Seventh Circuit found no deliberate indifference where an officer witnessing an attack called for back-up, but did not intervene to break up the fight until back-up arrived 15 or 20 minutes later. 664 F.3d at 180, 182. As the Seventh Circuit stated unequivocally in *Guzman*, 495 F.3d 852, 857 (7th Cir. 2007)(citations omitted), "Prison officials who had actual awareness of a substantial risk to the health or safety of an inmate incur no liability if they 'responded reasonably to the risk, even if the harm ultimately was not averted, because in that case it cannot be said that they were deliberately indifferent.' The 'mere failure of the prison official to choose the best course of action does not amount to a constitutional violation.'" The officers who responded to a late night fire in the vents of Division 10 responded reasonably, called for superiors and backup to assist in moving a large number of detainees, and transferred the entire tier from their cells to the Chapel promptly and with due regard for everyone's safety.[4] There was no deliberate indifference.

      Plaintiff, therefore, has failed to allege a sufficiently significant injury, objectively deplorable conditions, a subjective intent to punish, or a refusal to take reasonable steps to combat that harm, by any Defendant. The complaint must be dismissed with prejudice.

---

[4] Notably, the complaint alleges that the fire in the vents of Division 10 at 11:20 p.m. "created a thick chemical smelling smoke in tier 2A and the other tiers of Division 10." (Dkt. 31 at ¶ 35.) It is a reasonable inference that officers on the midnight shift not only had to make emergency accommodations for the detainees on Plaintiff's tier, but for dozens or hundreds of detainees in all of Division 10.

## II. Plaintiff Has Failed to Plead Individual Liability.

Liability under the Civil Rights Act requires a defendant's personal involvement in the alleged constitutional violation. *See Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). A supervisory official cannot be held liable for the conduct of his subordinates based on a theory of *respondeat superior*. *See Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002).

Although Plaintiff names 21 officers in their individual capacities and claims they all forced Plaintiff back to his tier, (Dkt. 31 at ¶ 44,) only Officers Jefferson, Velez, Brown, and Judge get any special mention in the "Factual Allegations," section of the Complaint. Plaintiff alleges that Brown got sick and vomited because of the fumes. Velez informed Plaintiff that no medical staff was immediately available in the middle of the night. Judge, without using any physical force, directed detainees to return to their cells sometime in the middle of the night, after they had been off their tier for over two hours.[5] Jefferson was allegedly not on the tier for

---

[5] To the extent that Plaintiff alleges any Defendant was rude or unprofessional, such allegations do not make out a federal claim under 43 U.S.C. §1983. *Ayoubi v. Altez*, 14-cv-4306, Dkt. 164 at p. 3-4 (N.D.Ill. Feb. 27, 2017) (Norgle, J.). *See also DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). "There is no constitutional right to be free from harassment by state officials." *Kohlman v. Village of Midlothian*, 833 F. Supp. 2d 922, 940 (N.D. Ill. 2011) (Manning, J.) (citing *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) (verbal threats do not arise to the level of a constitutional violation)); *see also Blanco v. Farley*, No. 09 CV 0424, 2011 WL 289435, at *2 (N.D. Ill. Jan. 27, 2011) (Zagel, J.) (collecting cases holding that "verbal harassment or abuse are insufficient grounds on which to state a constitutional deprivation pursuant to §1983"). Indeed, even if any of the Defendants had used physical force, it would not be actionable based on the facts here. *Guitron v. Paul*, 675 F.3d 1044 (7th Cir. 2012) (affirming dismissal pursuant to §1915A screening where plaintiff who refused to follow verbal orders was slammed against the wall and plaintiff's wrist was twisted, leading to swelling and two months of pain, because in a prison environment, "Custodians must be able to handle, sometimes manhandle, their charges, if a building crammed with disgruntled people who disdain authority (that's how the prisoners came to be there, after all) is to be manageable."); *Jones v. Walker*, 358 Fed. App'x 708, 712-13 (7th Cir. 2009) (affirming dismissal pursuant to §1915A screening where plaintiff stated he was pushed hard resulting in bruising because "A single shove that results in bruising is *de minimis* force that will not support a claim of excessive force.").

20 minutes, which as discussed above is not a constitutional or statutory violation, and then she immediately called supervisors when she saw smoke. Plaintiff has not alleged that any Defendants were aware Plaintiff was suffering any harm, let alone a cognizable injury, when they interacted with him.

Similar to the conditions analysis above, an officer can only be found deliberately indifferent to an objectively serious medical need, and Plaintiff's complaints of vomiting, being light-headed, or dizzy are not objectively serious. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (stating that an objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.") A condition is objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." *Toliver v. Cook County,* 12 C 5380, 2013 U.S. Dist. LEXIS 153404 (N.D. Ill. October 25, 2013) (Coleman, J.) citing *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). A serious medical condition need not be life-threatening, but should constitute "a denial of 'the minimal civilized measure of life's necessities.'" *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) (quoting *Farmer,* 511 U.S. at 834). Examples of "objectively serious" medical conditions recently recognized in the Seventh Circuit include severe seizures that contributed to a prisoner's death, *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012), a shotgun wound received in the prison and not treated for four days, *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012), a co-infection of HIV and hepatitis C, *Johnson v. Loftin*, 464 Fed. App'x. 530, 531 (7th Cir. 2012), and bleeding, vomiting, and retinal or corneal damage after an unprovoked attack. *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012). Aches, pains, and discomfort are not considered to be serious medical conditions. *See Gutierrez,* 111 F.3d at 1372.

Second, the court in *Farmer* analogized "deliberate indifference" to criminal recklessness. 511 U.S. at 838. "An act is reckless in the pertinent sense when it reflects complete indifference to risk-when the actor does not care whether the other person lives or dies, despite knowing that there is a significant risk of death." *Archie v. City of Racine*, 847 F.2d 1211, 1219 (7th Cir. 1988) (en banc). Mere negligence or even gross negligence does not amount to deliberate indifference. *Id.*; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Thus, it is not sufficient to show that defendant merely failed to act reasonably towards plaintiffs' health concerns. *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991).

Except for Jefferson, Velez, Brown, and Judge, the only allegations against the other officers are that they sent the detainees back to their tier approximately two hours after the evacuation. Such sketchy, ill-defined allegations cannot survive Rule 8, *Iqbal*, or *Twombly*. Moreover, Plaintiff cannot simply lump all Defendants together to claim that one of them must have harmed him. *Brooks v. Ross*, 578 F.3d 580 (7th Cir. 2009) (affirming motion to dismiss where complaint merely stated that "one or more of the Defendants" deprived plaintiff of his rights); *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption"); *Earl v. Howard*, 17 C 243, 2017 U.S. Dist. LEXIS 98678 at *10 *(N.D. Ill. June 27, 2017) (St. Eve, J.) (granting motion to dismiss because plaintiff's "group pleading" "fail[s] to adequately put each individual Defendant on notice of Plaintiff's constitutional claims because it is implausible that approximately 85 Defendants are liable for the same conduct based on the current allegations.") Plaintiff has failed to allege what specific wrongful actions were taken by the vast majority of named Defendants. The actions identified by Jefferson, Judge, Velez, and Brown do not rise to the level of deliberate indifference.

13

### III. Plaintiff Has Failed to Plead Official Capacity Claims

In contrast to individual capacity claims, official capacity claims are actually claims against the government entity for which the officers work. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985); *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007). A governmental entity is liable for damages under Section 1983 only if the plaintiff can show that the alleged constitutional deprivation occurred as a result of an official policy, custom, or practice. See *Monell v. Department of Social Serv.*, 436 U.S. 658, 692 (1978). Unconstitutional policies or customs generally take three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a usage or custom with the force of law; or (3) a constitutional injury was caused by a person with final policy-making authority. *Brokaw v. Mercer County*, 235 F.3d 1000, 1013 (7th Cir. 2000).

With the exception of formulaic, conclusory statements that the Court need not and should not accept, Plaintiff has not alleged that any so-called policy or practice was the "moving force" behind any alleged injuries. *County Comm'r of Bryan County v. Brown, 520 U.S. 397, 404* (1997); *Polk County v. Dodson,* 454 U.S. 312 (1981).

Plaintiff has failed to identify an actual policy at issue as required under *Monell*, and has similarly not adequately alleged a practice that is widespread. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 822-23 (1985) (holding that while there is no bright line defining "widespread custom or practice," a single allegation of unconstitutional conduct does not show that a policy, practice, or custom exists); *Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002) (holding that three isolated incidents were too few to indicate that a municipality had a widespread custom of which policymakers had reason to be aware); *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) (four incidents affecting the plaintiff not sufficient to show a "widespread unconstitutional practice");

14

*Estate of Moreland v. Dieter*, 395 F.3d 747, 760 (7th Cir. 2005) (three incidents of improper pepper-spraying insufficient to show widespread practice); *Jackson v. Marion County*, 66 F.3d 151, 152 (7th Cir. 1995); *Caldwell*, 959 F.2d at 673 (7th Cir. 1992) ("drawing a reasonable inference that a municipal custom or policy exists when he has only pled one incident….requires a leap in logic that we are unwilling to take.")

In *Johnson v. Sheriff of Cook County*, 2015 U.S. Dist. LEXIS 55748, No. 15-CV-741, at *4 (N.D. Ill. Apr. 24, 2015) (J. Guzman), the plaintiff stated that the "failure of medical personnel to provide plaintiff's decedent with the prescription medication he required to avoid death was a result of the widespread practice at issue in *Parish v. Sheriff*". The court found that insufficient, stating that "a complaint must allege facts, and Plaintiff's cursory reference to a 'widespread practice' as alleged in another case does not raise the plausibility of a *Monell* claim against the Sheriff's Office above a speculative level in this case." *Id*. at *5. Given that "Plaintiff's complaint contains *no* specific factual allegations against the Sheriff's Office", the court granted Sheriff Dart's motion to dismiss in *Johnson*. *Id*. at *4-5. Similarly, the case at bar fails to provide factual allegations about the policy or practice at issue, or allege that any policy or practice was the moving force behind any injury. The official capacity claims should be dismissed.

## CONCLUSION

WHEREFORE, Defendants request this Honorable Court enter an order dismissing Plaintiff's Second Amended Complaint with prejudice, enter judgment in favor of the Defendants, and for such other relief as the Court deems fit. Dismissal with prejudice is merited as this is Plaintiff's Second Amended Complaint, both amended complaints having been filed with the assistance of counsel. Defendants also request that this Court stay any responsive pleadings or discovery, in this matter until the Court rules on this motion.

                                                          Respectfully submitted,

                                                          Kimberly M. Foxx
                                                          State's Attorney of Cook County

By:    */s/ John Power*
        John Power
        Assistant State's Attorney
        Civil Actions Bureau
        500 Richard J. Daley Center
        Chicago, IL 60602
        John.power@cookcountyil.gov
        (312) 603-4370
        *Attorney for Defendants*

## CERTIFICATE OF SERVICE

    I hereby certify that I have caused true and correct copies of the above and foregoing to be served on Plaintiff pursuant to ECF, in accordance with the rules of electronic filing of documents, on this 9th day of July, 2018.

                                                          */s/ John Power*
                                                          JOHN POWER