# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MOIRSCHE TERRELL SIBLEY (M21315), ) | |
| ) | Case No. 17-cv-6298 |
| Plaintiff, ) | |
| ) | Judge Robert M. Dow, Jr. |
| v. ) | |
| ) | |
| THOMAS J. DART, et. al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendants' motion to dismiss Plaintiff's third amended complaint for failure to state a claim [51] is granted. Given that Plaintiff now has had four opportunities to state a claim, the dismissal will be with prejudice and the Court will enter a Rule 58 judgment in favor of Defendants and against Plaintiff. The Court thanks Attorney Bradley Smith for his exemplary service to the Court and the Trial Bar as recruited counsel for Plaintiff in this case. Civil case terminated.

**I.  Background[1]**

Plaintiff Moirsche Terrell Sibley brings this civil rights action under 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights by subjecting him to unconstitutional conditions of confinement and failing to provide medical care for his serious medical condition. At all relevant times, Plaintiff has been in the custody of the Illinois Department of Corrections ("IDOC") and all Defendants (with the exception of Cook County and Sheriff Thomas J. Dart) were correctional officers at the Cook County Department of Corrections, also known as the Cook

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

County Jail. [48 at ¶¶ 5-27.] Although Plaintiff currently resides at the Stateville Correctional Center [*id.*, at 5], this lawsuit relates to an incident that occurred on February 26, 2017, while Plaintiff was detained at the Cook County Jail pending trial. [*Id.* at ¶ 34.]

At approximately 11:20 p.m. on February 26, 2017, a fire in the vents of Division 10 of the Cook County Jail created a thick chemical smelling smoke in Tier 2A (Plaintiff's tier) and the other tiers of Division 10. [*Id.* at ¶ 35.] There was no watchman present in tier 2A at the time smoke first was observed, as Defendant Jonetta Jefferson had left her post. [*Id.* at ¶ 36.] Plaintiff claims that Jefferson had knowledge of previous fires in Cook County Jail. [*Id.* at ¶ 37.] Plaintiff and other detainees began screaming for help as Tier 2A filled with smoke. [*Id.* at ¶ 38.] Nobody came for approximately 20 to 30 minutes. During that time, Plaintiff lost consciousness, experienced severe chest pains, and had difficulty breathing. [*Id.*]

Jefferson returned to her post approximately 20 minutes after smoke was first observed in Tier 2A. [*Id.* at ¶ 36.] After seeing smoke in the tier, Jefferson again left the tier to call her supervisors. [*Id.* at ¶ 39.] Approximately 10 to 15 minutes later, officers began to evacuate detainees from Tier 2A into the chapel area of the jail. [*Id.* at ¶ 40.] After being evacuated into the chapel area, Plaintiff approached Defendant E. Velez to inform him that he has asthma and needed to see a doctor or nurse due to smoke inhalation, which made Plaintiff light-headed and dizzy. [*Id.* at ¶ 41.] Velez told Plaintiff that there was no medical staff available and walked away. [*Id.*] Plaintiff waited in the chapel for two hours without receiving any medical attention. [*Id.* at ¶ 42.] Plaintiff alleges that he became lightheaded and dizzy during that time. [*Id.* at ¶ 43.] He was vomiting, had chest pains, and even lost consciousness for a period of time. [*Id.*] Plaintiff asserts that these symptoms "were within the vision of every Defendant Officer." [*Id.*]

Plaintiff alleges that all Defendants forced Plaintiff and other detainees back to Tier 2A, even though Plaintiff told Defendants that he did not want to return to the smoke-filled tier. [*Id*. at ¶¶ 45, 47.] Defendant B. Judge even threatened to spray Plaintiff and the other detainees with mace if they did not hurry onto the smoke-filled tier. [*Id*. at ¶ 49.] While the detainees were being transferred back to Tier 2A, Plaintiff observed Defendant John Brown choking and gasping for breath from the smoke and then vomiting into a toilet. [*Id*. at ¶ 45.] When detainees were forced to return to Tier 2A, multiple Defendant officers refused to return to the tier because there still was too much smoke. [*Id*. at ¶ 48.] The smoke (which had a chemical smell) remained in Tier 2A for at least six hours after Plaintiff was forced to return. [*Id*. at ¶ 44.] Plaintiff continued to suffer from "smoke inhalation" after returning to the tier, but he does not allege any long-term physical injuries suffered because of this incident. [*Id*. at ¶ 51.]

## II.  Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations

in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

**III.    Analysis**

Plaintiff brings individual capacity claims against numerous Defendants for alleged unconstitutional conditions of confinement and for deliberate indifference to Plaintiff's serious medical needs. Because Plaintiff had not yet been tried when he was detained at Cook County Jail, his conditions of confinement claims arise under the Fourteenth Amendment and not the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies only to prisoners who have been convicted and sentenced. *Lewis v. Downey*, 581 F.3d 467, 474 (7th Cir. 2009) (holding that the plaintiff's Eighth Amendment rights "had not yet vested" because he had not been sentenced). Although the Seventh Circuit had long assessed pretrial detainees' due process rights under Eighth Amendment standards, that changed after the Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), "which held the due process standard for excessive force claims by pretrial detainees is less demanding than the Eighth Amendment standard for excessive force claims by convicted inmates." *McWilliams v. Cook Cty.*, 2018 WL 3970145, at *5 (N.D. Ill. Aug. 20, 2018) (summarizing *Kingsley*). Specifically, the Supreme Court held that the applicable standard is objective reasonableness. *Kingsley*, 135 S. Ct. at 2473.

In *Miranda v. Cty. of Lake*, the Seventh Circuit extended *Kingsley*'s holding to medical-care claims brought by pretrial detainees. 900 F.3d 335, 352 (7th Cir. 2018) ("We thus conclude * * * that medical-care claims brought by pretrial detainees under the Fourteenth Amendment are subject only to the objective unreasonableness inquiry identified in *Kingsley*."). Since *Miranda*,

district courts have applied *Kingsley*'s holding to conditions of confinement claims brought under the Fourteenth Amendment. See, *e.g., McWilliams*, 2018 WL 3970145, at *5. Thus, after *Kingsley*, to state a valid claim that his constitutional rights were violated under the Fourteenth Amendment, a plaintiff must show that: (1) the defendant "acted purposefully, knowingly, or perhaps even recklessly;" and (2) the defendant's conduct was objectively unreasonable. *Miranda*, 900 F.3d at 353-54. Whether the defendant's conduct was objectively unreasonable "turns on the facts and circumstances of each particular case." *Kingsley*, 135 S. Ct. at 2473 (internal quotation marks omitted). A pretrial detainee cannot prevail by showing that the defendant was merely negligent. *McCann*, 909 F. 3d at 887.

The Supreme Court has also acknowledged the difficulty of managing a correctional facility and directed courts to take that difficulty into account when assessing whether a defendant's actions were objectively reasonable:

> "[r]unning a prison is an inordinately difficult undertaking," and * * * "safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face." Officers facing disturbances "are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." For these reasons, we have stressed that a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer. We have also explained that a court must take account of the legitimate interests in managing a jail, acknowledging as part of the objective reasonableness analysis that deference to policies and practices needed to maintain order and institutional security is appropriate.

*Kingsley*, 135 S. Ct. at 2474 (citations omitted).

**A.    Count I**

Plaintiff brings an unconstitutional conditions of confinement claim (Count I) against Defendant Jefferson for leaving her post unattended in the period preceding the fire. Plaintiff alleges that Jefferson subjected Plaintiff to a smoke-filled tier by leaving her post unattended. [31,

5

at ¶ 54.] "In cases involving the conditions of confinement in a prison, two elements are required to establish a violation of the Eighth Amendment's prohibition against cruel and unusual punishment: first, an objective showing that the conditions are sufficiently serious—*i.e.*, that they deny the inmate the minimal civilized measure of life's necessities creating an excessive risk to the inmate's health and safety—and second, a subjective showing of a defendant's culpable state of mind." *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017) (internal citations and quotation marks omitted). The culpable mental state required to state a claim under the Eighth Amendment is "one of deliberate indifference to inmate health and safety." *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018) (quoting *Haywood v. Hathaway*, 842 F.3d 1026, 1031 (7th Cir. 2016)) (internal quotation marks omitted). To state a conditions of confinement claim under the Fourteenth Amendment, however, a plaintiff need only allege that "defendant's conduct was objectively unreasonable"—in addition to alleging that the conditions of confinement were sufficiently serious. *McWilliams*, 2018 WL 3970145, at *5. "Reasonable safety" constitutes a minimal life necessity protected by the Eighth and Fourteenth Amendments. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989).

Defendants first argue that Count I should be dismissed because Plaintiff has not alleged a sufficiently serious condition. In its previous order, the Court reviewed the second amended complaint's allegations regarding thick, chemical-smelling smoke and its effects on Plaintiff and determined that Plaintiff had "alleged a sufficiently serious condition to warrant constitutional scrutiny." [47 at 7.] Defendants point out that the third amended complaint, unlike the previous version, states that "[t]he start of Sibley's suffering until his evacuation from the tier took a total of 40-50 minutes." [48 at ¶ 61.] Defendants argue that this more-specific allegation—45 minutes of exposure, with no allegation of long-term effects—is not sufficient to state a claim that

6

Plaintiff's exposure to smoke was a serious condition, citing *Morissette v. DeTella*, 1997 WL 619851, *1 (N.D. Ill. Sept. 29, 1997) (45 minutes of exposure to engine fumes which caused plaintiff to become dizzy and vomit, and which led to long-term headaches and dizzy spells, were not actionable because "brief and isolated exposure to engine exhaust does not violate the Constitution").

While Defendants have a point, *Morissette* is distinguishable and Plaintiff has adequately pled a serious condition (though it is a close call). In *Morissette*, the plaintiff's symptoms at the time of exposure were dizziness and vomiting, and he later suffered headaches. *Id.* at *3. Here, Plaintiff has alleged that he has asthma and, when smoke was first filling the tier, he experienced severe chest pains, had difficulty breathing, and lost consciousness. [48 at ¶ 38-39.] While his initial exposure to the smoke was about the same amount of time as the *Morisette* plaintiff's exposure to engine fumes, Plaintiff in this case has alleged symptoms that are more severe, especially the loss of consciousness, see *Orlowski v. Milwaukee Cty.*, 872 F.3d 417, 423 (7th Cir. 2017), and severe enough for the Court to conclude that he sufficiently alleged a serious medical condition.

Still, in order to state a conditions of confinement claim against Defendant Jefferson, Plaintiff also must allege that Jefferson's "conduct was objectively unreasonable." *McWilliams*, 2018 WL 3970145, at *5. The Court agrees that Plaintiff has not met that burden. Plaintiff alleges that Jefferson was on duty late in the evening and returned to the tier approximately 20 to 30 minutes after smoke was observed. [48, at ¶ 36.] After seeing the smoke-filled tier, Jefferson left to call her supervisors. [*Id*. at ¶ 39.] In the third amended complaint, Plaintiff added an allegation that Jefferson had knowledge of previous fires in the jail. [*Id*. at ¶ 37.] Plaintiff also argues that

7

Jefferson violated jail policy by leaving her post without being relieved by a backup officer and leaving a maximum-security tier unsupervised. [*Id.* at ¶ 55-56.]

First, alleged policy violations are not, *ipso facto*, civil rights violations. See Seventh Circuit Pattern Jury Instruction 7.04; *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) (explaining that § 1983 does not provide a remedy for violations of state statutes or regulations) (citing *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003). Second, Plaintiff's allegation about Jefferson's previous knowledge of fires in the jail is not enough to show deliberate indifference. The third amended complaint asserts that fires in the vents occur "in the winter months" and that Jefferson had knowledge of previous fires. [48 at ¶ 67.] Plaintiff does not claim that Jefferson was aware of the fire at issue in this case when she left her post, or was aware of any particular risk of fire at that time or on that night. Nor does Plaintiff allege facts indicating that Jefferson knew that her leaving the prisoners unattended for 20 to 30 minutes would create any substantial risk of harm to Plaintiff or any other detainees. "Complaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger." *Gevas v. McLaughlin*, 798 F.3d 475, 480–81 (7th Cir. 2015). Here, Plaintiff's allegations about the danger of a fire and Jefferson's knowledge of that danger are both generalized and vague, and not enough to demonstrate that leaving the tier for 20 to 30 minutes was objectively unreasonable.[2]

Furthermore, Plaintiff alleges that Defendant Jefferson returned to the tier 20 to 30 minutes after smoke was observed. [48, at ¶ 36.] After seeing the smoke-filled tier, Jefferson immediately

---

[2] *Wilson v. Brown*, 261 Fed.Appx. 442, 443 (3rd Cir. 2008), is helpful for comparison, though not binding precedent. In *Wilson*, the Third Circuit affirmed summary judgment for prison officials and employees when the plaintiff had "inhaled a lot of smoke" from a fire caused by an "accidental electrical malfunction." The Third Circuit reasoned that the plaintiff had not produced evidence that he was housed under conditions subjecting him to an unreasonable risk of death or injury by fire, even though the unit he was in lacked sprinklers and two correctional officers were asleep and unprepared to react to the fire when it began. *Id*.

left to call her supervisors. [*Id*. at ¶ 39.] Backup arrived 10 or 15 minutes after that, and Jefferson and other officers began evacuating Tier 2A. [*Id*. at ¶ 40.] Plaintiff cites no authority, and the Court is not aware of any, suggesting that a 20- to 30-minute response time to smoke in a maximum-security tier of a jail was objectively unreasonable. Nor can the Court say that as a matter of law, calling supervisors to alert them of smoke, or waiting for backup before releasing and evacuating a tier full of maximum-security detainees, is objectively unreasonable.

Once prison officials know about a serious risk of harm, they are required only to take reasonable measures to abate it, and "[o]f course, an official's response may be reasonable even if it fails to avert the harm." *Dale*, 548 F.3d at 569, citing *Borellow v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006). According to the third amended complaint, Defendant Jefferson did take measures to abate the risk of harm posed by smoke filling the tier. She alerted her supervisors, requested backup, and, when it arrived, evacuated Tier 2A. In context of the "inordinately difficult" task of running a jail, *Kingsley* 135 S. Ct. at 2474, and the emergency situation facing Defendant Jefferson, her actions were not objectively unreasonable. Thus, the third amended complaint does not state a claim for unconstitutional conditions of confinement against Defendant Jefferson, and Count I is dismissed with prejudice.

### B. Count II

Plaintiff brings an unconstitutional conditions of confinement claim (Count II) against Defendants Jefferson, Judge, Velez, Willeda, Koedyker, Schous, Brown, Wells, Maddox, Ker, Satduran, Belletierre, Thomas, Kos, Salerno, Brown, Benitez, Turner, Rodriguez, Schnolis, and Cooper based on their conduct following the evacuation. Specifically, Plaintiff alleges that these Defendants required Plaintiff "to return to the smoke-filled tier" in violation of his Fourteenth

---

The Third Circuit agreed with the district court that even this evidence did not support a conclusion that the officers were deliberately indifferent to a substantial risk of harm to the inmates. *Id.*

Amendment rights.[3] As discussed above, Plaintiff has alleged a sufficiently serious condition warranting constitutional scrutiny.

Defendants argue, however, that Count II should be dismissed because Plaintiff fails to plead that Defendants were objectively unreasonable in returning detainees to their cells. Plaintiff must allege facts sufficient to establish that each Defendant "acted purposefully, knowingly, or perhaps even recklessly" and that their "conduct was objectively unreasonable." *McCann v. Ogle Cty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018).

After being evacuated, Plaintiff and the other Tier 2A denizens spent two hours in the Chapel before being transferred back to their cells. [48, at ¶ 42.] Plaintiff alleges generally that Defendants "forced" Plaintiff and others back onto the smoke-filled tier or watched Plaintiff and others be "forced" back onto the smoke-filled tier. [*Id*. at ¶¶ 44-45.] Plaintiff further alleges that some Defendants refused to return to the tier because of the smoke. [*Id*. at ¶ 48.] Defendant Judge even threatened to spray Plaintiff and other detainees with mace if they did not return to their cells. [*Id*. at ¶ 49.] Plaintiff states that smoke lingered in the tier for an additional six hours. [*Id*. at ¶ 44.]

Plaintiff also alleges that Division 10, where his tier was located, houses maximum-security detainees known for fights, stabbings, and obstructing locking mechanisms on their cell doors. [48 at ¶ 55.] Tier 2A alone contained 48 inmates. [*Id*. at ¶ 66.] The fire created smoke not just on Plaintiff's tier, but on tiers throughout Division 10. [*Id*. at ¶ 35.] While the third amended

---

[3] In his third amended complaint, Plaintiff briefly alleges that these Defendants delayed the evacuation of the tier. [48, at ¶ 66.] Plaintiff also revised the allegation to a 30- to 40-minute delay (up from 10 minutes) by including in that time Defendant Jefferson's 20- to 30-minute absence from the tier. However, in his response brief, Plaintiff does not base any of his arguments on the alleged delay. Even if Jefferson's absence should be included in any "delay" in evacuating the tier, Plaintiff has twice opted not to argue that theory or respond to Defendants' position on it—once in his response brief on the previous motion to dismiss [37] and once in his response to the instant motion [52]. As such, any potential argument on those grounds is forfeited. See *Jones v. Connors*, 2012 WL 4361500, at *7 (N.D. Ill. Sept. 20, 2012) ("A party's failure to respond to arguments the opposing party makes in a motion to dismiss operates as a waiver or forfeiture of the claim and an abandonment of any argument against dismissing the claim.") (collecting cases).

complaint does not allege how many inmates were housed on other tiers and exactly how many tiers were affected by the smoke, it does paint a picture of a large number of inmates from a dangerous population out of their cells in the wee hours of the morning.

The situation described in the third amended complaint is one of those "inordinately difficult undertaking[s]," *Kingsley* 135 S. Ct. at 2474, that this Court must keep in mind while assessing the reasonableness of Defendants' actions in a prison setting. On one hand, the third amended complaint alleges that Defendants forced Plaintiff into an environment that was, by Defendants' own admissions and actions, unpleasant and uncomfortable. Plaintiff also alleges that all 21 Defendant Officers saw him suffering from smoke inhalation before they took him back to Tier 2A.

On the other hand, Defendants were operating in an emergency situation, and "response to emergency situations in a prison environment necessarily entails curtailment of rights and privileges of the inmate population." *La Batt v. Twomey*, 513 F.2d 641, 648 (7th Cir. 1975). When emergencies or accidents cause even severe conditions for detainees, courts tend not to find constitutional violations. See *Wilson v. Seiter*, 501 U.S. 294, 300 (1991) ("if a prison boiler malfunctions accidentally during a cold winter, an inmate would have no basis for an Eighth Amendment claim, even if he suffers objectively significant harm"); *State of La. ex rel. Francis v. Resweber*, 329 U.S. 459, 464 (1947) (when first execution of inmate failed because of a mechanical problem with the electric chair, scheduling a second execution was not cruel and unusual punishment because inmate's additional suffering was accidental, comparable to "a fire in the cell block"); *Del Raine v. Williford*, 32 F.3d 1024, 1051 (7th Cir. 1994) (Manion, J., concurring) (conditions of confinement claim regarding temperature of prison cell would be properly denied at summary judgment if evidence showed that "an accidental mechanical problem caused the

cold"); *Gloster v. Tanna*, 2017 WL 6523155, at *2 (N.D. Ill. Feb. 21, 2017) (concluding that one instance of food poisoning, not alleged to have been intentional, is insufficient to state conditions-of-confinement claim) (citing *Franklin v. True*, 76 F.3d 381 (7th Cir. 1996) (unpublished opinion)).[4] According to the third amended complaint, at least 48 maximum-security detainees—who were known for fighting, stabbing, and obstructing the locks on their cell doors—were out of their cells, congregating in the same room in the middle of the night, and outnumbered the guards by a margin of at least 2 to 1 (48 detainees and 21 guards). After two hours, the guards transferred the detainees back to their tier, which still contained smoke. During the emergency requiring the release and evacuation of at least one full tier, it is regrettable but not surprising that moving and keeping control of detainees involved discomfort, or even temporary suffering. But both the allegations in the third amended complaint and common sense establish that prison officials had a legitimate interest in controlling a group of dangerous detainees, and in the emergency context of responding to a fire and managing a prison population, Plaintiff cannot show that Defendants' actions were objectively unreasonable. For these reasons, Count II is dismissed with prejudice.

---

[4] See also *Brazelton v. Holt*, 462 F. App'x 143, 146 (3d Cir. 2012) (guard catching inmate's hand in hinge of closing cell door was "an accident compounded by negligence and carelessness" but not sufficient to sustain an Eighth Amendment claim); *Bacon v. Minner*, 229 F. App'x 96, 99 (3d Cir. 2007) (affirming dismissal and finding that allegations of reduction of recreation time and complete denial of recreation time during emergency lockdowns did not state a claim for an Eighth Amendment violation); *Grabowski v. Jackson Cnty. Pub. Defenders Office,* 47 F.3d 1386, 1395 n. 12 (5th Cir.1995) ("[A]n accident or inadvertence or mere negligence does not [in itself] trigger the Eighth Amendment.") (citing *Estelle v. Gamble,* 429 U.S. 97, 105–06 (1976)); *Matylinsky v. Angelone*, 33 F.3d 59 (9th Cir. 1994) (failure of the air conditioning in the disciplinary segregation unit did not constitute cruel and unusual punishment); *Cookish v. Comm'r, New Hampshire Dep't of Corr.*, 980 F.2d 721 (1st Cir. 1992) ("prison officials may be justified in subjecting prisoners to more rugged conditions of confinement during and after an emergency"); *George v. King*, 837 F.2d 705, 707 (5th Cir. 1988) ("a single incident of unintended food poisoning, whether suffered by one or many prisoners at an institution, does not constitute a violation of the constitutional rights of the affected prisoners").

C.   **Count IV**

Plaintiff brings a Fourteenth Amendment claim for deliberate indifference to a serious medical condition (Count IV) against Defendants Judge, Velez, and Brown.[5] The Supreme Court has made clear that the Eighth Amendment prohibits the deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976) ("[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."). To establish an Eighth Amendment claim on that basis, Plaintiff must allege that (1) his condition was objectively serious, and (2) Defendants "were deliberately indifferent to his health or safety." *Orlowski v. Milwaukee Cty.*, 872 F.3d 417, 423 (7th Cir. 2017) (citing *Pinkston v. Madry*, 440 F.3d 879, 891 (7th Cir. 2006)). To state a Fourteenth Amendment medical-care claim, however, Plaintiff need not allege that Defendants' acted with deliberate indifference; rather, Plaintiff need only allege that Defendants' conduct "was objectively unreasonable." *Miranda*, 900 F.3d at 351.

Plaintiff adequately alleges that his condition was objectively serious. "A serious medical condition is one that 'has been diagnosed by a physician * * * or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Orlowski*, 872 F.3d at 423 (quoting *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)). "A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Plaintiff alleges that he lost consciousness, experienced severe chest pains, and had difficulty breathing while he waited approximately 30 to 45 minutes to be evacuated to the chapel area. [48, at ¶ 38.] Plaintiff alleges that after he told Velez that he had asthma and

---

[5] For the purposes of appeal only, the third amended complaint includes as defendants in this count Jefferson, Willeda, Koedyker, Schous, Wells, Maddox, Ker, Satduran, Belletierre, Thomas, Kos, Salerno, Brown, Benitez, Turner, Rodriguez, Schnolis, and Cooper.

13

needed medical attention, Velez said that no medical staff was available. [*Id*. at ¶ 41.] Plaintiff waited in the chapel area for two hours without receiving any medical attention. [*Id*. at ¶ 42.] Plaintiff became light-headed, dizzy, vomited for an extended period of time, had trouble breathing, and lost consciousness. [*Id*. at ¶ 43.] Plaintiff assert that his symptoms "were within the vision of every Defendant Officer." [*Id*.] These allegations, taken together, are sufficient to establish that Plaintiff had an objectively serious health condition. *Orlowski v. Milwaukee Cty.*, 872 F.3d 417, 423 (7th Cir. 2017) ("Failure to breathe and failure to regain consciousness are undoubtedly life-threatening medical conditions that are obvious to a layperson.").

With respect to Defendant Velez, Plaintiff alleges that he informed Velez that "he has asthma and [that] he needed to see a doctor or nurse due to his inhalation of smoke for a long period of time, which made [Plaintiff] light-headed and dizzy." [48, at ¶ 41.] Plaintiff further alleges that Velez told Plaintiff that no medical staff was available and walked away. [*Id*.] However, Plaintiff does not allege that, at the time he sought medical treatment, Velez was aware that Plaintiff had lost consciousness as a result of his exposure to smoke. Nor does Plaintiff allege that Velez was aware that Plaintiff had difficulty breathing as a result of his asthma or of his exposure to the smoke. Although Plaintiff informed Velez that he had asthma, he only indicated that the asthma and exposure to smoke caused him to feel light-headed and dizzy. There is still no indication that Velez knew or had reason to know about the seriousness of Plaintiff's distress at the time Plaintiff requested medical attention.

With respect to Defendant Judge, Plaintiff alleges that Judge threatened to spray him and the other detainees with mace if they did not return to the smoke-filled tier. [48, at ¶ 49.] And with respect to Defendant Brown, Plaintiff alleges that Brown himself experienced adverse symptoms from the smoke, including choking, gasping for air, and vomiting. [*Id*. at ¶ 45.] Though

there are no specific allegations regarding Judge's and Brown's knowledge of Plaintiff's symptoms, Plaintiff does generally allege that, "within the vision of every Defendant Officer," he felt light-headed and dizzy, had chest pains, vomited, and lost consciousness during the two-hour period that the detainees were in the chapel. [48, at ¶ 43.] Taken in the light most favorable to Plaintiff, the third amended complaint alleges that all the guards saw him vomit and at least temporarily lose consciousness while in the chapel,[6] which is probably enough at this stage to establish that Velez, Judge and Browne had knowledge of Plaintiff's serious medical condition.

That does not, however, establish that Defendants' conduct was actionable because the third amended complaint does not allege "objectively unreasonable" conduct. *Miranda*, 900 F.3d at 351. Plaintiff claims that Defendants ignored his requests for medical attention, [48, at ¶ 86(c)], but he fails to allege that Defendants had any other course of action available. To begin, Plaintiff does not allege that any medical staff actually were available or that any of the Defendant Officers had any medical training sufficient to treat his condition or render any additional aid, or even that they should have attempted to render aid. See *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (police officers were not responsible for administering medical care to detainee). In fact, Velez told Plaintiff that no medical staff were available [48, at ¶ 41], which is entirely plausible for a maximum-security section of a prison at 2:00 a.m. in the middle of an ongoing emergency. Plaintiff's response brief suggests that the "Defendant Officers could have easily called medical staff or EMTs," [52 at 12] but that allegation appears nowhere in the third amended complaint.[7] In short, the third amended complaint does not allege that Defendants could have provided medical

---

[6] The third amended complaint does not explain how guards could have detected Plaintiff's feelings or chest pains, but loss of consciousness is the most serious of Plaintiff's symptoms, so the Court is comfortable setting Plaintiff's lightheaded, dizzy, and feelings of pain to the side for this analysis.

[7] Nor did Plaintiff include any such allegations in his three prior complaints [1, 20, 31].

care to Plaintiff at the time he requested it, so it fails to assert that Defendants "acted purposefully, knowingly, or perhaps even recklessly" and that their "conduct was objectively unreasonable."

Even if medical staff had been available, Defendants' actions would not have been considered objectively unreasonable. Plaintiff's request to see a doctor or nurse would have required medical staff to leave their stations and come to him, in the middle of at least 47 other detainees, or would have required one of the officers overseeing those detainees to leave the chapel and take Plaintiff to the medical personnel. The Court could not fault Defendants for choosing not to pursue either course of action at that time, especially viewing the situation "from the perspective and with the knowledge of" the Defendant Officers, as the Court must. *Kingsley*, 135 S. Ct. at 2474. With the guards outnumbered 2 to 1 by maximum-security detainees out of their cells and congregating together in the middle of the night while a fire burns in a vent, it would not have been objectively unreasonable to deny Plaintiff's request for immediate medical attention.[8] Count IV is dismissed with prejudice.

### D. Count III (*Monell* Claim)

In its prior order [47], the Court granted Defendants' motion to dismiss Plaintiff's *Monell* claim (Count III). [47 at 14]. Plaintiff included Count III in the third amended complaint solely for the purposes of appeal. Count III remains dismissed.

### E. Qualified Immunity

Even if any or all of the foregoing analysis finding no liability on the merits were incorrect, the Defendant Officers would be entitled to qualified immunity. "The qualified immunity defense is designed to protect government agents 'from liability for civil damages insofar as their conduct

---

[8] Notably, the third amended complaint covers only a nine-hour period or so, and there is no allegation that Plaintiff's symptoms persisted beyond that time, that Plaintiff made later requests to see medical staff, or that Plaintiff's subsequent requests were denied.

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine the availability of qualified immunity in a particular case, the Court engages in a two-step inquiry. "The initial, threshold question is whether the facts, taken in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right." *Id*. (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If a constitutional right is violated, then the Court "must determine if that right was clearly established at the time of the alleged violation." *Id*. (citing *Finsel v. Cruppenink*, 326 F.3d 903, 906 (7th Cir. 2003)). This inquiry is flexible, however, and the Court may decide that conduct did not violate a clearly established constitutional right without deciding if a constitutional right was violated at all. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009). Furthermore, "the clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Plaintiff does not cite, and the Court is not aware of, any authority establishing a pre-trial detainee's right to be from exposure to smoke from an accidental fire, or a pretrial detainee's right to immediate medical care for smoke inhalation in the middle of an ongoing emergency at the prison. In fact, all of the most analogous cases (see pp. 11-12 & n.4, *supra*) find no liability, and the Supreme Court's analysis in *Kingsley* (which postdates most of those cases) points in the same direction. Because Plaintiff has not shown that either such right was clearly established at the time of the alleged violation, and Defendant Officers would be entitled to qualified immunity on Counts I, II, and IV.

Even in normal circumstances, running a prison "is an inordinately difficult undertaking." *Kingsley*, 135 S. Ct. at 2474. Of course, the circumstances present here—a smoky blaze erupting

17

around midnight in the maximum security tier of a county jail—presented extraordinary challenges as prison officials and inmates scrambled to maintain personal safety and order. Both the underlying legal standards articulated in *Kingsley* and the doctrine of qualified immunity ensure that officers on the front line in these trying circumstances are given wide latitude to do their best in making the split-second decisions that they must to protect everyone present from all conceivable harms. With the benefit of time to reflect in the clear light of day, perhaps one or more Defendant might have managed to come more quickly or more effectively to Plaintiff's aid, which might have alleviated the respiratory stress he (and at least one Defendant) were experiencing. But the unfortunate unwillingness or inability of Defendants to render or locate immediate medical care for Plaintiff in the chaos of the fire is not actionable under Section 1983.

## IV. Conclusion

For the foregoing reasons, Defendants' motion [51] is granted. Given that Plaintiff now has had four opportunities to state a claim, the dismissal will be with prejudice and the Court will enter a Rule 58 judgment in favor of Defendants and against Plaintiff. The Court thanks Attorney Bradley Smith for his exemplary service to the Court and the Trial Bar for accepting appointment as recruited counsel in this case. Civil case terminated.

Date: March 18, 2019

Robert M. Dow, Jr.
United States District Judge